UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE LONG, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 16 cv 03072 |
| v. | ) ) | |
| | ) | Judge Joan B. Gottschall |
| | ) | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) | |
| | ) | |
| Defendant. | ) ) ) | |
| ------------------------------------------------------- | ) | |
| | ) | |
| CLARENCE LUNA, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 16 cv 04617 |
| v. | ) ) | |
| | ) | Judge Joan B. Gottschall |
| | ) | |
| FEDERAL NATIONAL MORTGAGE ASSOCATION, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Julie Long ("Long") and Clarence Luna ("Luna') (collectively, "Plaintiffs") in this consolidated action have sued Federal Home Loan Mortgage Corporation ("Freddie") and Federal National Mortgage Association ("Fannie") (collectively, "Defendants"), alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA") in connection with their respective purchases of foreclosure properties from Defendants (Long from Freddie and Luna from Fannie). Plaintiffs contend that Defendants

refused to properly fill out Transfer Tax Declarations in connection with the property sales, and also made false statements in a form letter that each Plaintiff received from Defendants, the consequence of which was that Plaintiffs were forced to pay taxes that were not actually owed. Defendants now move jointly to dismiss Plaintiffs' respective complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. 22]. Because Plaintiffs have failed to plead an unfair practice under the ICFA, Defendants' joint motion to dismiss is granted.

## I. BACKGROUND

Fannie and Freddie are Government-chartered private corporations whose mission includes the establishment of a secondary market for residential mortgages by, among other things, selling homes that they acquire after default and foreclosure. *See DeKalb County v. Federal Housing Finance Agency*, 741 F.3d 795, 797 (7th Cir. 2013). Congress created Fannie in 1938 as a federal agency, providing in Fannie's charter that it was exempt from all taxation, except real property taxation. *Id.*; *see* 12 U.S.C. § 1723a(c)(2) (exempting Fannie from "all taxation now or hereafter imposed by any State … or local taxing authority, except that any real property of the corporation shall be subject to State … or local taxation to the same extent as other real property is taxed"). Fannie became a private corporation in 1968, but its tax exemption status did not change. *DeKalb*, 741 F.3d at 797. Congress created Freddie as a private corporation after Fannie became private and enacted for Freddie a similar tax exemption. *Id.*; *see also* 12 U.S.C. § 1452(e).

In 2008, as a consequence of a severe economic downturn, Fannie and Freddie went broke, so Congress created the Federal Housing Finance Agency ("FHFA"), a regulatory agency charged with serving as Fannie's and Freddie's conservator. *DeKalb*, 741 F.3d at 798. As with Fannie and Freddie, Congress imbued FHFA with broad tax exemption status. *See* 12 U.S.C. §

2

4617(j)(2) (stating that FHFA "shall be exempt from all taxation imposed by any State, county municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed ….").

In the course of their operations, Fannie and Freddie purchase mortgages that are subject to foreclosure proceedings and sell the homes to third-party private buyers. Complicating these sales, however, is the fact that the State of Illinois has a real estate "transfer tax" that is imposed whenever real property changes hands. *See* 35 ILCS 200/31-10. This tax, which is a tax on the transfer of property, as opposed to a tax on real property (the latter of which falls outside of Fannie's and Freddie's statutory taxation exemption), allows a tax of 50 cents for every $500.00 of the property's total value. *See id.*; *DeKalb*, 741 F.3d at 798. Illinois counties may "piggyback" on the state tax by imposing their own real estate transfer tax of 25 cents for every $500.00 of property value. *DeKalb*, 741 F.3d at 798; 55 ILCS 5/5-1031(a).[1] Illinois and its subdivisions have imposed these taxes on the sales of foreclosed properties sold by Fannie and Freddie, notwithstanding Fannie's and Freddie's statutory exemption from taxation, by either directly seeking the taxes directly from Fannie and Freddie or by shifting the burden of the tax to the third-party buyer. *See Fed. Nat'l Mortg. Ass'n v. City of Chicago*, No. 15 C. 9150, 2016 WL 5477539 (N.D. Ill. Sept. 29, 2016), appeal filed, No. 16-4140 (Dec. 13, 2016). As a consequence of the imposition of transfer taxes by the state and its counties, numerous lawsuits have been filed that directly address the issue of taxation of real estate sales involving Fannie and Freddie.

---

[1] Among the stated exemptions from the requirements of the state and county transfer tax statutes (and the only one even arguably applicable) are deeds "relating to . . . property acquired by any governmental body or from any governmental body." 35 ILCS 200/31-45(b)(1). As will be discussed below, Plaintiffs contend that Fannie and Freddie are government bodies within the meaning of § 200/31-45(b)(1) and thereby enjoy a complete transactional exemption from the transfer taxes. Defendants reject the contention that they are governmental bodies within the meaning of the statute.

3

In *Fannie Mae v. Hamer*, No. 12 C 50230, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013), Fannie, Freddie and FHFA sued the director of the Illinois Department of Revenue and the clerks and recorders of numerous Illinois counties, seeking a declaratory judgment that Fannie and Freddie are exempt from the defendants' attempts to collect real estate transfer taxes from them. The defendants sought to impose state and county transfer taxes in the amount of 50 cents for every $500.00 of value (state tax), plus 25 cents for every $500.00 of value (county tax). They also refused to record a document that listed Fannie and Freddie as exempt from the taxes and sent Fannie and Freddie a letter demanding back payment of several years' worth of transfer taxes. *Id*. at *1. In ruling on the legality of these actions, the court considered the statutory purpose of Fannie and Freddie (to bring stability to the secondary mortgage market by, for instance, promoting less expensive, more predictable markets), and the precise language of Fannie's and Freddie's statutory charter as to its tax exempt status. After analyzing these issues, the court concluded that Fannie and Freddie are indeed exempt from the real estate transfer taxes; however, the court declined to determine the broader question of whether a *transaction* involving Fannie and Freddie is entirely tax exempt. *Id*. at *6-7. Consequently, the court's narrow ruling left undecided the question of whether third party buyers may be saddled with the defendants' transfer taxes. *Id*. at *7, *9.

The defendants in *Hamer* appealed, and the Seventh Circuit consolidated the case with two others to answer the common question of whether a state and its local counties can levy a tax on sales of real property by Fannie and Freddie. *DeKalb*, 741 F.3d 795. In its analysis, the Seventh Circuit went through a similar analysis as the district court in *Hamer*, examining Fannie's and Freddie's congressional creation, the reasons for their establishment, and the Constitutional underpinnings of their tax exempt status. The court then affirmed the lower court

4

rulings, concluding in relevant part that the real estate transfer tax is not a real property tax but instead is a tax on the transfer of property, and that Fannie and Freddie are exempt from real estate transfer taxes levied by state and local governments. *Id*. at 804. The court did not rule on the broader question of whether real estate transactions involving Fannie and Freddie are completely tax exempt.

In October 2015, Fanny, Freddie, FHFA, and numerous individual plaintiffs who had purchased homes from Fannie and Freddie in 2013 and 2015 filed suit against the City of Chicago, the Chicago Department of Finance, and Rahm Emanuel, among others, seeking injunctive and declaratory relief in the form of a ruling that the City of Chicago could not impose a transfer tax (as collected by the Chicago Department of Finance) on transfers of real estate from Fannie and Freddie to new buyers: in other words, a ruling that the entire real estate transaction between Fannie and Freddie and a third party buyer is exempt from taxation. *See Fed. Nat'l Mortg. Ass'n v. City of Chicago*, 2016 WL 5477539. A ruling in the plaintiffs' favor would prevent state and local taxing bodies from shifting a tax that is unrecoverable from Fannie and Freddie onto the third party buyer.

In that case, the transfer tax at issue sought to levy a $3.75 tax on every $500.00 of transfer price, to be paid by the buyer of the real property, as well as a supplemental tax of $1.50 on every $500.00 of the transfer price, to be paid by the seller (the "Transfer Tax"). *Id*. at *3; *see also* City of Chicago Municipal Code, § 3-33-030. The parties to the real estate sale paid the Transfer Tax by buying tax stamps that were then affixed to the deed, assignment, or other instrument of assignment. *Id*.; § 3-33-040. The plaintiffs argued that the entire transaction should be exempt from the Transfer Tax, while the defendants maintained otherwise, arguing that since the property buyers are not included in Fannie's and Freddie's tax exemption clauses,

5

they are not immune from the Transfer Tax. In ruling for the plaintiffs, the court turned to the Seventh Circuit's ruling in *DeKalb* (finding Fannie and Freddie exempt from taxes on the transfer of real estate), and the Supreme Court case of *Laurens Fed. Sav. & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517 (1961) (holding that a state or local entity cannot flip an excise tax from a federal entity to its private counterparty because doing so still negatively affects the federal entity), to conclude that Fannie's and Freddie's tax exemption clauses prevent the defendants from applying the Transfer Tax to Fannie's and Freddie's real estate agent sales, regardless of whom the defendants require to pay the tax. *Id.* at *9. The court noted that a contrary ruling would "frustrate . . . Fannie's and Freddie's Congressional mandate . . . which was to increase and ensure national access to mortgage liquidity," *id.* at *8, because it would force them to discount their selling price in order to offset the increased transactions to buyers, and potentially cause them to ignore localities with increased transaction costs. *Id.* The ruling is currently on appeal before the Seventh Circuit.

The court turns now to the facts of this case, beginning with Plaintiff Long. Long filed her "Class Action Complaint" on March 11, 2016. [Case No. 16 cv 3072, Dkt. 1]. In her complaint, Long alleges as follows: On December 10, 2015, Long made an offer to purchase a home owned by Freddie in Sheridan, Illinois. (Compl., Dkt. 1, ¶ 9). Freddie accepted the offer on December 23, 2015 for the price of $205,000.00. (*Id.*, ¶¶ 10, 11). Prior to the closing, on December 29, 2015, Freddie's attorney Brian Tracy of Codilis & Associates, P.C. ("Codilis") sent Thomas Gosselin, presumably Long's attorney, a letter (the "Long Letter") that stated in relevant part:

> The seller [Freddie] is no longer considered exempt from all state, county and municipality transfer tax stamps. The Buyer is responsible for the payment of the stamps at closing. Where a municipality honors the seller's federal exempt status,

6

an exempt stamp will be requested. The state and county do not honor the seller's federal exempt status.

(*Id.*, ¶ 13; Exh. A (Long Letter)). Also prior to the closing (which occurred on January 15, 2016), Codilis prepared a Transfer Tax Declaration required for all sales of real property in Illinois except for certain statutorily exempt sales. (*Id*. ¶ 17; Exh. B (Long Transfer Tax Declaration)). In the Transfer Tax Declaration, Freddie (through Codilis) "refused to check the appropriate boxes on the form to indicate that the sale was exempt from transfer taxes because Freddie Mac was a government body" and similarly refused to let the buyer check the "appropriate boxes to exempt the sale from transfer taxes . . . ." (*Id.*, ¶ 18). As a consequence of both the Long Letter and Freddie's refusal to mark that the sale was exempt from transfer taxes on the Transfer Tax Declaration, Long was forced to pay $307.50 in state and county transfer taxes. (*Id*. ¶ 19). Long paid $205.00 in state transfer taxes, and $102.50 in county transfer taxes. (*Id.*, ¶¶ 20-21).

The allegations of Luna's Class Action Complaint are very similar to Long's. Luna filed his complaint on April 25, 2016. [Case No. 16 cv 4617, Dkt.1]. On February 12, 2015, Luna made an offer to purchase a home owned by Fannie in Elgin, Illinois. (Compl., ¶ 9). Fannie accepted the offer on February 17, 2015 for the price of $175,000.00. (*Id.*, ¶¶ 10, 11). Prior to the closing, on February 23, 2015, Fannie's attorney Brian Tracy of the Codilis law firm sent to Thomas Gosselin, presumably Luna's attorney, a letter (the "Luna Letter"), that stated in relevant part:

> The seller [Fannie] is no longer considered exempt from all state, county and municipality transfer tax stamps. The Buyer is responsible for the payment of the stamps at closing. Where a municipality honors the seller's federal exempt status, an exempt stamp will be requested. The state and county do not honor the seller's federal exempt status.

(*Id.*, ¶ 13; Exh. A (Luna Letter)). Also prior to the closing (which occurred on March 24, 2015), Codilis prepared a Transfer Tax Declaration required for all sales of real property in Illinois except for certain statutorily exempt sales. (*Id.* ¶ 17; Exh. B (Luna Transfer Tax Declaration)). In the Transfer Tax Declaration, Fannie (through Codilis) "refused to check the appropriate boxes on the form to indicate that the sale was exempt from transfer taxes because Fannie Mae was a government body" and similarly refused to let the buyer check the "appropriate boxes to exempt the sale from transfer taxes. . . ." (*Id.*, ¶ 18). Luna contends that as a consequence of the Luna Letter and Fannie's refusal to mark that the sale was exempt from transfer taxes on the Transfer Tax Declaration, Luna was forced to pay $262.50 in state and county transfer taxes. (*Id.* ¶ 19). Luna paid $175.00 in state transfer taxes, and $87.50 in county transfer taxes. (*Id.*, ¶¶ 20-21).

Plaintiffs each assert one count under the ICFA against Defendants based on allegedly false representations made in the Luna Letter and Long Letter (collectively, the "Codilis Letters") regarding Fannie's and Freddie's tax exempt status, as well as the manner in which Codilis, on behalf of Defendants, completed the Transfer Tax Declarations.

## II.  DISCUSSION

### A.  Legal Standards

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a complaint if it "fail[s] to state a claim for which relief can be granted." The court must accept all facts pleaded in the complaint as true, and must draw all reasonable inferences in the plaintiff's favor. *INEOS Polymers, Inc. v. BASF Catalysts,* 553 F.3d 491, 497 (7th Cir. 2009). In general, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" *E.E.O.C v. Concentra Health Services, Inc.,* 496 F.3d 773, 776

8

(7th Cir. 2007) (quoting Rule 8(a)), with sufficient facts to put the defendant on notice "of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (internal quotation mark omitted) (alterations in original). To survive a motion to dismiss under Rule 12(b)(6), the complaint need not present particularized facts, but "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic,* 550 U.S. at 555). A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir. 1988).

The ICFA "is a regulatory and remedial statute intended to protect consumers ... against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002); *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc*., 536 F.3d 663, 669 (7th Cir. 2008); 815 ILCS § 505/2. The Supreme Court of Illinois has held that recovery under the ICFA "may be had for unfair as well as deceptive conduct." *Windy City Metal,* 536 F.3d at 669. While a deceptive practices claim must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, an unfair practices claim need not because it is not premised on fraud. *Camasta v. Jos. A. Banks Clothiers, Inc*., 761 F.3d 732, 737 (7th Cir. 2014). Three considerations guide an Illinois court's determination of whether conduct is unfair under the ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson,* 775 N.E.2d at 961. To make out an ICFA claim based upon an action that offends public policy, the court must consider the public policy "as established by statutes, the common law or

9

otherwise." *Ekl v. Knecht,* 585 N.E.2d 156, 163 (Ill. App. Ct. 1991); *see also Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013). Conduct is oppressive if it denies the plaintiff a meaningful choice or places an unreasonable burden on the plaintiff. *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.,* 871 F. Supp. 2d 763, 769 (N.D. Ill. 2012); *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.,* 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008). To satisfy the substantial injury factor, a plaintiff must allege an actual economic injury. *In re Michaels Stores Pin Pad Litig.,* 830 F.Supp.2d 518, 526 (N.D. Ill. 2011). A court may find unfairness even if the claim does not satisfy all three criteria. *Id.* For example, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.*

**B.    Consideration of Documents Attached to Defendants' Motion to Dismiss**

A preliminary matter involves whether the court should consider exhibits attached to Defendants' joint motion to dismiss, namely the "Real Estate Purchase Addendum" (Luna Addendum) and the "Addendum #1 to Contract of Sale" (Long Addendum) (collectively, the "Addenda") that are part of the contract documents underlying each plaintiff's home purchase from Fannie or Freddie. *See* Defs.' Mem. in Supp. Joint Mot. to Dismiss, Dkt. 23, Exh. A (Luna Addendum); Exh. B (Long Addendum). Generally, "[a] motion to dismiss under Rule 12(b)(6) must be decided based on the complaint, 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'" *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 702 (N.D. Ill. 2016) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012)). Where a motion to dismiss makes reference to supplemental matters outside of the pleadings that are not subject to one of the accepted exceptions, the additional information must be rejected or else the motion is

converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1430 (7th Cir. 1996).

"The incorporation-by-reference doctrine" allows a defendant moving for dismissal under Rule 12(b)(6) to submit a document to the court, without converting the defendant's 12(b)(6) motion to a motion for summary judgment, where the plaintiff mentions that document in his complaint and it is central to his claim. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see also Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir. 2002) (stating that "the converse is also true: documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss"). This doctrine prevents a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002); *see also 188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (allowing courts, under limited circumstances, to consider documents outside of the complaint because it serves the goal of preventing parties from "surviving a motion to dismiss by artful pleading or by failing to attach relevant documents").

The incorporation by reference rule is straightforward when a document sought to be attached in a motion to dismiss is mentioned in the plaintiff's complaint, but becomes more complicated when (as here) the complaint fails to mention or attach a document, perhaps on purpose, and the plaintiff objects to the defendant's attempt to have it included for the court's consideration. In such a case, the court must examine the connection between the document and the manner in which the defendant seeks to use the contested document. In *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009), the Seventh Circuit considered whether a district

11

court properly considered the supplements to "Summary Plan Descriptions," the latter of which were referred to in the complaint, but not the former. In finding that the supplements were properly included for the court's consideration, the Seventh Circuit noted that the complaint referred to the Summary Plan Descriptions, and that the supplements "serve[d] much the same purpose as the originals," meaning that both revealed information central to the allegations of the plaintiff's complaint. *Id*. at 583; *see also Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 661–62 (7th Cir. 2002) (holding that even though it was not explicitly referenced in the complaint, a district court was permitted to consider an agreement in ruling on a motion to dismiss, since it was "impossible to render the necessary adjudication without reference to" the agreement). In *Wojcik v. InterArch, Inc.*, No. 13-CV-1332, 2013 WL 5904996 (N.D. Ill. Nov. 4, 2013), the district court relied on *Hecker and Venture Assoc.,* among other Seventh Circuit cases, to conclude that "even if the complaint does not explicitly mention an exhibit, the court may consider the exhibit on a motion to dismiss if (1) the exhibit supplements or amends another document properly before the court and (2) the defendant relies on the exhibit for the 'same purpose' that made the underlying document central to the plaintiff's claims." *Id*. at *7.

In this case, Plaintiffs seem to assiduously avoid mentioning the existence of underlying contract documents between the parties or even the use of the word "contract," despite the fact that the allegations of the complaints clearly establish the creation of a contract between Plaintiffs and Fannie (Luna) and Freddie (Long).[2] At the same time, Plaintiffs each attach two documents related to the sale and purchase of their homes—the Codilis Letter and the Transfer Tax Declaration—to support their contention that Defendants unjustly forced them to pay the transfer taxes. The Codilis Letters specifically state that **"This letter is sent as a clarification of**

---

[2] Each plaintiff alleges that an offer to purchase a home was made to Fannie or Freddie, that Fannie or Freddie accepted the offer, and that a home was purchased for a certain sum (consideration). *See* Long Compl., ¶¶ 9-12; Luna Compl., ¶¶ 9-12.

**the Addendum to Contract of Sale that has been signed and attached to the contract. This letter is not a modification letter, just a clarification of the terms already agreed upon by the buyer and seller**." *See* Long Letter, Luna Letter (emphasis in Luna Letter original). Based on the fact that the Codilis Letters prominently refer to the Addenda, the court finds that the Addenda supplement documents that are properly before the court. Additionally, the court finds that Defendants intend to use the Addenda for the same purpose as Plaintiffs seek to use the Codilis Letters: to illustrate the representations Defendants made to Plaintiffs regarding who bore the responsibility for the payment of state and local transfer taxes. Because the Addenda serve the same function as the Codilis Letters with respect to the central allegations of Plaintiffs' complaints, the court is satisfied that the incorporation by reference exception is met in this case.

C.   **Defendants' Joint Motion to Dismiss**

Turning to Defendants' joint motion to dismiss, Defendants first argue that dismissal of Plaintiffs' consolidated action is warranted due to the unsettled interpretation of the law surrounding the taxation of real estate transactions involving Fannie and Freddie. Defendants maintain that the lack of legal clarity as to the right of Illinois and its counties to assess transfer taxes against the purchasers of real property from Fannie and Freddie, and the fact that the taxing authorities do not regard these transactions as exempt, means that Plaintiffs cannot successfully allege a violation of the ICFA as to Defendants. In support of this argument, Defendants cite *Romo v. Fed. Nat'l Mortg. Ass'n*, No. 14 C 10508, 2015 WL 10734721 (N.D. Ill. Aug. 10, 2015). *Romo* involved a factually similar case brought under the ICFA that was dismissed when the court found the plaintiff unable to plead a deceptive or unfair practice. There, the plaintiff, Romo, purchased a home from Fannie in 2013. The contract executed by the parties stated that Fannie is exempt from realty transfer taxes and provided that in the event transfer taxes are

13

assessed on the sale, Romo alone would be responsible for them. *Id*. at *1. When this situation came to pass, Romo filed a complaint against Fannie under the ICFA, claiming that Fannie committed a deceptive act when it misrepresented to him that he owed realty taxes when no such taxes were owed, and that Fannie committed an unfair business practice by requiring him to pay taxes that were not owed. *Id*. at *2. The basis of Romo's argument for the non-imposition of taxes was the "government body" exception set forth in 35 ILCS § 200/31-45, *see* footnote 1, *infra*. Romo claimed that Fannie qualified as a "government body" and that this status exempted the entire transaction from state and local transfer taxes.

In ruling in Fannie's favor and granting its motion to dismiss, the *Romo* court noted that at the time of Romo's home purchase, Illinois courts had yet to determine whether Fannie's involvement in a real estate transaction exempted the entire transaction from the imposition of realty transfer taxes. *Id*. at *3. The district court noted that at the relevant time, *Hamer* had been decided (finding Fannie and Freddie tax exempt based upon their charters but declining to rule on whether the entire transaction was exempt) but was on appeal, meaning that "at the time of the alleged misrepresentations, the law regarding whether transactions involving Fannie Mae were exempt from the imposition of realty transfer tax was not settled." *Id*. at *3. Accordingly, the court found that it was "neither unfair nor deceptive for Fannie Mae to represent to Romo that he was responsible for paying the transfer taxes assess by Illinois and Cook County." *Id*. "[W]here the interpretation of a law is not settled," the court noted, "an ICFA claim premised on the misrepresentation of that law cannot lie." *Id*. at *2. The court also noted that because Romo did not allege that Fannie had assessed the tax or collected it, but instead alleged only that Fannie represented the tax was owed, no deception had occurred. *Id*. at *3; *cf. Nava v. Sears*, *Roebuck and Co*., 995 N.E.2d 303, 310 (Ill. App. Ct. 2013) (finding that Sears may have committed a

deceptive act by charging a tax it was not statutorily authorized to charge). As for Romo's contention that Fannie was a "government body," the court again noted a lack of case law interpreting that issue and Romo's inability to demonstrate otherwise. *Id*. at *3. The court then declined to address Romo's other arguments and dismissed the action.

Plaintiffs contend that *Romo* is inapplicable to the facts of this case because, they assert, Defendants knew at the time of the home closings that "their position was unfair and contrary to established law because at the time of the respective sales, they were, and still are, plaintiffs in a lawsuit in the Northern District of Illinois against the City of Chicago [*Fed. Nat'l Mortg. Ass'n v. City of Chicago*] where they have taken the position that imposing any transfer taxes on the sales of their homes violates the Supremacy Clause and clearly established Supreme Court precedent." *See* Pls.' Resp. to Defs.' Mot. to Dismiss, Dkt. 24, at 2. In other words, on account of Defendants having filed a lawsuit seeking a ruling that their tax exempt status preempts the Illinois state and county transfer tax as a matter of law, Defendants violated the ICFA by preparing documents (the Codilis Letters and the Transfer Tax Declarations) that took a position contrary to the lawsuit and placed responsibility for the payment of transfer taxes on Plaintiffs. Plaintiffs take an alternative position that Defendants are tax exempt based on their status as government bodies and that Defendants' refusal to mark "appropriate boxes" on the Transfer Tax Declarations was an unfair act in violation of the ICFA.

The court concludes that the factual underpinnings of this case are on all fours with *Romo*. Between late 2014 and January 2016, representing the time period of negotiation and closure of Plaintiffs' homes, Defendants informed Plaintiffs via the Addenda and the Codilis Letters (this issue is discussed more fully below) that they would be responsible for any state and county transfer taxes. At that time, the only Seventh Circuit ruling in effect regarding Fannie's

15

and Freddie's tax exempt status was *DeKalb*—where the court concluded that Fannie and Freddie are exempt from real estate transfer taxes levied by state and local governments but did not rule on the broader question of whether Fannie's and Freddie's tax exempt status preempted shifting taxation onto the buyer; in other words, whether the entire transaction was exempt from taxation. Judge Ellis's ruling in *Fed. Nat'l Mortg. Ass'n v. City of Chicago* (finding that Fannie's and Freddie's statutory tax exemptions preempt the state and county transfer tax and thus prohibit flipping the tax onto the buyer) was issued on September 29, 2016—approximately nine months after Long closed on her home and 18 months after Luna closed on his home. Therefore, during the relevant time period, the State of Illinois and its counties were authorized under 35 ILCS § 200/31-10 and 55 ILCS § 5/5-1031 to collect realty transfer taxes on transfers of real property except where the transactions are exempt (including the "government body" exemption, which the court finds inapplicable to this case, as discussed below). Accordingly, the law was far from settled, and is still unsettled due to the pending appeal in *Fed. Nat'l Mortg. Ass'n v. City of Chicago,* as to whether buyers may be assessed transfer Illinois state and county taxes, or whether the entire transaction is tax exempt. On this basis, the court aligns with Judge Ellis's conclusion in *Romo* that it was neither unfair nor deceptive for Defendants to represent that Plaintiffs were responsible for paying the transfer taxes assessed by Illinois and it counties. This conclusion is in accord with numerous other courts that similarly have rejected a plaintiff's ICFA claim based on statutes that were unsettled or not yet construed. *See, e.g., Whittler v. Midland Funding,* No. 14 C 9423, 2015 WL 3407324, at *2 (N.D. Ill. May 27, 2015) (where law surrounding proper venue under the Fair Debt Collection Practices Act was unsettled, no violation of the ICFA could be found); *Cahnman v. Agency Rent–A–Car Sys., Inc.,* 701 N.E.2d 512, 515 (Ill. App. Ct. 1998) (even assuming that defendant's conduct was prohibited, the court

16

found no violation of the ICFA where the question [of charging a fee for additional drivers] "was at best unsettled"); *Lee v. Nationwide Cassel, L.P.,* 675 N.E.2d 599, 604 (Ill. 1996) (plaintiff could not state an ICFA claim where alleged misrepresentation was based on an "erroneous interpretation" of the Motor Vehicle Retail Installment Sales Act at a time of "uncertainty about the applicable law"). The fact that Defendants took the position in a lawsuit filed in October 2015 that the entire transaction is exempt is of no moment where, at the time of Plaintiffs' negotiations and closings, that lawsuit had not yet reached its conclusion and there was no guarantee of Defendants' success on the merits.

The court turns now to the question, answered above in the negative but not fully discussed, of whether Defendants made unfair statements to Plaintiffs by means of the Codilis Letters. To reiterate, these letters state:

> The seller [Fannie or Freddie] is no longer considered exempt from all state, county and municipality transfer tax stamps. The Buyer is responsible for the payment of the stamps at closing. Where a municipality honors the seller's federal exempt status, an exempt stamp will be requested. The state and county do not honor the seller's federal exempt status.

The Codilis Letters served to clarify the Addenda. The Luna Addendum expressly states that Fannie is "exempt from realty transfer taxes . . . and will not pay realty transfer taxes regardless of local practice. Any realty transfer taxes due on the sale as a result of the conveyance of Property will be the sole responsibility of the Purchaser." The Long Addendum makes a slightly different but substantively similar assertion. *See* Dkt. 23, Exhs. A & B.

The Addenda, along with the somewhat unclear language of the Codilis Letters, establish that Fannie and Freddie told Plaintiffs that they would be responsible for paying the state and county transfer taxes. While it is debatable whether the Codilis Letters successfully clarified anything at all, Plaintiffs have not alleged that they were confused by the statements in the Codilis Letters, or that they failed to understand that Fannie and Freddie considered themselves

17

tax exempt, or that they failed to understand what the state and county might do, or that they were in some other respect confused or misled by the language of the letters. Rather, Plaintiffs simply identify three statements contained in the Codilis Letters as examples of language they believe is false and "contrary to established law" based upon Defendants' position in its pending lawsuit that the taxes are improperly levied in transactions involving Fannie and Freddie. However, as discussed above, there is nothing unfair about Defendants' provision of this information to Plaintiffs where a court had yet to rule that Illinois and its counties may not legally assess transfer taxes. *See Stern v. Norwest Mortg., Inc.,* 688 N.E.2d 99, 104 (Ill. 1997) (finding plaintiff could not bring ICFA deceptive or unfair practices claim where defendant's alleged misrepresentation that plaintiffs were responsible for certain fees constituted "an honest mistake concerning the interpretation of a statute that had yet to be construed" and where "defendant did not conceal, suppress, or omit any material fact with the intent that plaintiffs would rely on such action"). For the reasons already discussed above regarding the ability to bring an ICFA claim in the face of unsettled law, Plaintiffs have not stated a claim under the ICFA based on the contents of the Codilis Letters.

Finally, the court finds no merit to Plaintiffs' argument that Defendants committed an unfair act by refusing to check a box on the Transfer Tax Declarations declaring themselves "governmental bod[ies]," the effect of which would have been to render the entire transaction exempt from transfer taxes pursuant to 35 ILCS 200/31-45(b)(1) (exempting from Illinois state transfer taxes deeds relating to "property acquired by any governmental body or from any governmental body"); *see also* Long Compl. ¶¶ 8, 18; Luna Compl. ¶¶ 8, 18. Defendants strongly deny that they are properly characterized as governmental bodies, and Plaintiffs have not directed the court to any case law, state or federal, suggesting that Fannie and Freddie fall

18

within this definition. The court's own research has revealed nothing, either. Moreover, in *Hamer*, the district court alluded to the lack of case law interpreting the Illinois tax code as it pertained to real estate transfer taxes and added: "This court will leave it to Illinois courts to determine which party—grantor or grantee—bears the burden to pay the real estate transaction tax and/or whether the state may enforce the tax on the other party to the transaction where the normally-taxed party is exempt." 2013 WL 591979 at * 9. Similarly, Judge Ellis in *Romo* rejected the plaintiff's attempt to label Fannie as a governmental body for purposes of the Illinois tax code, noting in doing so that the Seventh Circuit in *DeKalb* never addressed whether Fannie was a governmental body for purposes of § 200/31-45. *Id*. at *3 n.2. This court likewise declines to delve into the question of whether Illinois courts consider Fannie and Freddie to be governmental bodies. For this additional reason and the reasons set forth above, Plaintiffs have failed to state a claim under the ICFA based on the manner in which Defendants completed the Transfer Tax Declarations.

### III. CONCLUSION

For the reasons set forth above, Defendants joint motion to dismiss [Dkt. 22] is granted. Plaintiffs' respective complaints in this consolidated action are dismissed with prejudice. Civil case terminated.

Date: March 30, 2017

                                            /s/
                                Joan B. Gottschall
                                United States District Judge